Thank you. Good morning, your honors. Jean Reese, USC Immigration Clinic, pro bono counsel for Ms. Zulima Guerrero-Esperanza and her two children. The board's decision was pursuant to matter of verbano, so this court reviews both the board's decision and the immigration judge's decision. The immigration judge based the adverse credibility determination on four reasons, demeanor, implausibility, omissions, and and Shretha V. Holder, the immigration judge's adverse credibility determination must be reasonable, and it has to take into consideration the individual circumstances of the applicant. Here, Ms. Guerrero-Esperanza's circumstances include that she's not an articulate witness, is not concise, she doesn't speak English, and has limited education, and this comes across in the transcript, but I think it was hard to follow at places. She's relating a lengthy history of abuse at the hands of her ex-spouse, who is a gang member, and he lives with her on and off until ultimately he's imprisoned, and even from prison, he's having contact with her and threatening her. Regarding the first ground of demeanor, the immigration judge cites to Ms. Guerrero-Esperanza's use of the words truly and truthfully as demeanor indicating that she is not credible, but this is not demeanor. Repeating truly is part of Ms. Guerrero-Esperanza's inarticulate manner of testifying, and it's not the kind of demeanor that's unavailable to the reader of the transcript. You can read that she said truly 28 times in the transcript, so this is not what is demeanor contemplated. Counselor, I'm always troubled when you try to attack a demeanor finding because it is testimony to evaluate on a cold record, and I think our case law makes clear, we may not say that we give it extra deference, but it is very difficult as an appellate judge when the fact finder cites things like what may have been a nervous tick, I don't know, and saying crucially and so on, but it could also indicate the other, that she was being evasive or deceptive in her testimony, and that is an articulated basis for a demeanor finding, is it not? Your Honor, I think demeanor contemplates those things that are not visible to this court, but the judge here cites to her saying truthfully, and so that's a verbal response. He doesn't like her response, but that is visible in the testimony. The witness looked away every time she was answering a question, and we're told by psychologists that that can be an indication of untruthfulness when someone is under interrogation. Yes, Your Honor, and the case law talks about that. Shreffa talks about squirming in the seat or talking more rapidly. Those things aren't detected in a transcript. Here, the repetition of truly or truthfully before responding to a question is part of the answer, part of the response. I guess the problem I'm having with the argument is that you could go either way on that. I mean, I hear your argument, but it could also be an indication of similar to squirming or looking away, and the finder of fact actually articulated a basis. So, if it's sort of an equipoise, don't we have to go with the finder of fact on the demeanor finding? I disagree that it's an equipoise. She says truly, and the judge says this means she's not credible, and this is a verbal response. This isn't a physical response, and I think the judge doesn't say she says truly before. For example, in Manus, the petitioner responded very calmly to direct examination, and then on cross-examination became very nervous and agitated and squirming, and so the judge was able to say, okay, on direct, very calm, chaotic on cross when confronted with questions. There's nothing here other than the fact that she just says truly that the judge articulates to say this is indicating she's not being credible. Not only is it not nonverbal demeanor, there's no explanation as to why repeating the word, and I might say you know or um a lot, why would that be indicating it's not credible? Also, Daniel says it's not. How about the two substantial inconsistencies or omissions with regard to the account of abuse by Miguel and his day passes from prison if that's what was actually approached her for the children while he was serving his prison sentence? Isn't that a pretty substantial ground on which to base an adverse credibility determination? So, there is testimony that she went to the prison. She also says in her declaration, and I think if you're honest talking about the inconsistency where the judge says that she didn't talk about the fact he was getting released, she does on page excuse me at 30 paragraph 38 of her declaration the certified record page 209. She says he was going to be let out for a couple days at a time and was coming to find her. So, the fact she never said that there is no consistency there about the fact of whether he was getting out of the prison and he was contacting her in different ways. So, there's not an omission there and also the record you know her cousin Samantha also said he was getting out in these day passes and then she testified to it and again she testified inartfully about it but she did say that at certain point he was leaving after she said I don't know if it's some kind of probation but he left a few days at a time. So, that's not an inconsistency. I think the only two inconsistencies are really trivial whether her son was six months or two years of age at one of the violent incidences and she explains there were so many incidences that happened that I can't remember and I she says I think it was you know he was a 2003 or 2004 and the Shreffa says that you know an adverse credibility in order to take in the totality of the circumstances has to take in the normal limits of human understanding and memory and that there may be some inconsistencies or lack of recall present in a witness's case. And then the second inconsistency is whether police kissed her on the cheek or tried to kiss her on the forehead and again this is the type of inconsistency is really too trivial to support an adverse credibility determination in light of the totality where she talks about how he she tried to tell him about the abuse he took her home he told her she was pretty so that is not enough to support an adverse credibility. Counselor, let me just jump in real quick because the one that concerns me the most about your client we haven't spoken about Daniel yet but as the mother here she tells the story about the abuse and how he hit her and cracked her teeth and then she says she couldn't and her written declaration she says then she could not leave but then when she testified she testified that in fact she did leave and she went to the mother's house with the police and the mother said you can't come in unless you have a search warrant and that seems like a pretty big expansion on the story the pretty big expansion on the story that she said had in the declaration and why can't the immigration judge say look you gave us one version of the declaration then there was this very expanded version when you testified at trial that none of that was in the declaration or that's that part two was not in the declaration how did we get around that in terms of finding her not credible? Well I would say as a preliminary matter Livey Holder says generally omissions are less probative of credibility and so a mere omission of details will not support an adverse credibility finding. Here she is providing more details which is pretty common in testimony to include more details in a declaration. Also the description of the events that happen afterwards they don't change her application they don't they're not inconsistent and again looking at the totality of the circumstances there were several times that she was beaten there were several times that the police were called and so the fact that she didn't include this particular encounter where the police go with her to the mom's house in the declaration really but provides more detail in the testimony that given the totality is not like a significant omission here and it doesn't change her story or her it's not central well it doesn't change the story and so that omission is not going to be enough you know the omission of details regarding that is not enough to support an adverse credibility determination. Ms. Reese you don't have a lot of time left but could you talk just briefly about Daniel's case? Yes I think the judge does the same thing with Daniel as far as speculating and we didn't really talk much about speculation but Daniel responds to a question that the main inconsistency is he says he didn't have problems with gangs in school and then the judge later when he's talking about a problem that he had he was still enrolled in school at the time and so that he answered the literal question so that is not an inconsistency and then the second thing the judge finds not plausible for Daniel is the fact that he was told to leave the body and then found out later the body went to the hospital I think in order for Daniel to believe the judge is suggesting that the body had to stay there and it would be there today for example but at some point someone found the body took it to the hospital the neighbors talked so the judge there's nothing in the record that contradicts Daniel's testimony regarding the body eventually going to the hospital and him finding out about it and the judge is speculating that if nobody you know if if there were only people there watching it then later nobody could find out about the body and that's just not supported by the evidence all right so counsel we'll give you two minutes for rebuttal we had a lot of questions for you thank you you got it all right uh wait for the clock to reset Mr. O'Connell uh good morning your honors uh good morning Mr. East um I'm coming to you from my sister's spare bedroom in Virginia Beach so if there are wi-fi issues I will switch the phone as soon as I can I have the number queued up here so if you can't hear me just let me know um I'll try to speak as slow as I can so to make everything as clear as possible um I may please the court Joseph O'Connell on behalf of the uh respondent the acting attorney general your honors substantial evidence supports the agency's adverse credibility determination in this case and because the standard of review is so deferential the court should deny the petition for review there are significant inconsistencies between Ms. Guerrero's written declaration and her oral testimony the most notable inconsistency I think is the inconsistency in her allegations regarding the incident in which she alleged that she was hit in the mouth by Miguel so in her written statement as your honor noted she said Miguel hit her in the mouth and broke her teeth her allegation regarding that incident in a written statement ended by saying he closed the door and I could not leave this is noticeably different from what she told the IJ during the removal hearing she testified that Daniel was home and let her out of the locked bathroom at which point she called the police took off running after Miguel the police met her on the way to Miguel's mother's house and they went together and the police tried to enter Miguel's mother's house but couldn't do so because they didn't have a search warrant so all that was omitted from Ms. Guerrero tried to characterize this as simply added detail but I don't think you can describe these as added details these are brand new allegations and what makes them so important and what makes them new allegations is not just added details is that they add to the substance of her underlying claim in that they go towards showing that the Salvadoran police are either unable or unwilling to help her in other words these new allegations go towards satisfying legal requirements for satisfying asylum that's exactly why these aren't added details and are instead entirely new allegations and that's not the only thing that was inconsistent so her statement said that all this happened when Ariel was two years old but then she testified that this happened when he was six months old this isn't a just a case of a misstatement of dates which sort of by using a very specific factual context so for instance it's one thing to say that x incident happened in 2011 or 2012 but it's another thing to say that x incident happened when I was in college or when I was in law school so in this case she said that all this happened when she had a six-month-old baby but then she was confronted with her written statement which said that all this happened when she had a two-year-old toddler again this isn't just a misstatement of this is an error in her narrative that was illustrated by the fact that it was premised on the wrong factual context and I think this discrepancy is important because when she was asked about it and this goes to the demeanor issue too you get a good good example of why the IJ found her demeanor to be elusive so when she was asked about the discrepancy in dates this is what she said she said truly Ariel was born in 2002 maybe I got confused by the fact of dot dot dot because practically he was born 15 days to start the next year this is all at AR in at page 112 and this is sort of an example of why the IJ found her demeanor to be elusive and I know that it's it's sort of hard to review as your honor noted it's hard to review a demeanor finding on this cold record but I mean the demeanor findings happen all the time but this isn't just a demeanor finding that the IJ didn't base this entire adverse credibility determination on her demeanor it's sort of a icing on the cake type situation where it's just one more thing that the IJ relied on in this context um there's another inconsistency yes your honor I'm sorry if I could just jump in here because there are two cases here effectively you know this is kind of two for one we have the mother and the son uh I think I understand your position on the mother and candidly for Miss Reese I think the case for the mother is is the harder one for Miss Reese to prevail on I'm just gonna just put it out there but for the son let's say we agree with Miss Reese on the son that there wasn't enough to make an adverse credibility finding I'm not asking you to agree with that just that's the premise of the question where are we in this case if we say Daniel uh there wasn't enough to say he was not credible but for the mom there was sufficient what's the next step procedurally in this case if if the court agrees that Miss Guerrero is not against Daniel we talked about this a little bit in our moot court and we weren't entirely sure how to how to work it but I think that I think that the petition would have to be severed um and so that the petitioner for review could be denied in part in terms of as to Miss Guerrero and then Daniel's case could be remanded back to the agency for further proceedings um and so and the annual file a didn't Daniel file a separate application he did which so which was Miss Guerrero filed her application and they were consolidated the removal yeah the person the removal proceedings were consolidated but their applications were adjudicated separately all in all in the same removal proceedings um it makes this case a little bit messier um but again I think if the if the court disagrees with Daniel's to be set Mr. O'Connor I think I think they could do that isn't that the solution though in essence you would um Daniel was seeking asylum derivatively through his mother that's case one but he's 23 years old so he filed a separate petition pursuing asylum on his own we we could theoretically deny the mother's petition which would derivative derivatively foreclose Daniel in case one from obtaining asylum but grant his standalone petition in case two and remand that couldn't we I think that's the correct I think that that's possible I don't think that's a correct answer but I think Ariel was the derivative beneficiary of Miss Guerrero's application and then Daniel had his asylum applications I thought both children were listed I'm not a hundred percent Daniel might have been a derivative as well but because he filed his own independence what what's your best argument as to why we should uphold the adverse credibility finding as to Daniel okay I do have an argument to make on that issue um and I can point you to the record on this so in his statement Daniel was inconsistent as well so in his written statement he said and that he was threatened by gang members who told him that he had three days to provide them with information about the gang leaders in his neighborhood but in his testimony he said that it was he called he called it a miracle he said it was a miracle because the gang members told him to leave and to quote never come back but then he later said that the gang members told him to come back within 72 hours with information about gang leaders in his neighborhood that in itself is inconsistent so quote he called it a miracle to never come back again or come back within 17 days or 72 hours excuse me with information on the gang leaders in his area not only that but that sort of strikes me as implausible that the gang leaders in some area were asking Daniel about inside information on the gang leaders in his area it's also sort of implausible in a sense that his narrative and the timeline for his narrative sort of matches up perfectly with his mother's narrative and that they all came to the United States together that's just more context and I mean there are other obviously other reasons to come to the United States there's educational and economic opportunities and so these narratives sort of coinciding at the same time in addition to the fact that his testimony is inconsistent on that gang issue could be substantial evidence supporting the agency's adverse credibility determination against Daniel so again the court did not understand they did not understand okay argument about the coincidence of their arrival explain that to me okay so his timeline and his narrative for leaving El Salvador sort of matched up perfectly with his mother's timeline in which she claimed that Miguel was getting out of prison and you know all of their all of their timelines sort of matched up to which they had to leave El Salvador in March 2016. I think the timelines are suspect in the sense that they all kind of came together at the same time so but again I wouldn't rely on that alone I would rely on inconsistency in his testimony during his in so far as he claimed the gang members told him to leave and never come back and calling that a miracle and then at the same time saying well we also want you to come back within 72 hours and provide inside information on all the leaders in your area which is also implausible I don't think I don't think gang members would do that but I mean that's that's just my opinion that's what the agency held as well so I went over so if there's any other questions I'd be happy to answer them. No okay thank you very much Mr. O'Connell. Ms. Reese you've got two minutes and before you start if you could touch on I'm not asking you to concede anything about the mother but if you could kind of touch on the scenario we asked Mr. O'Connell about where son prevails mother does not what do we do? Okay I so I if if the son prevails and the mother does not because the cases were consolidated and because if the son is credible and the son is also talking about the abuse to the mom and the merits of the CAD and the asylum and withholding were not addressed because of the adverse credibility for mom that they all have to go back to assess whether or not for example if Daniel's testimony is credible whether he is eligible for asylum withholding and CAT but also whether the mom is is eligible for CAT for example because of given that that Daniel's testimony is true and I think because they're all consolidated they they can't they um given the fact that the only thing that is before you is the adverse credibility finding and there's still the merits and Daniel being credible would affect the merits of the others. But if mom can't establish entitlement to asylum then by definition she can't meet the higher standard for withholding of removal and then it just simply becomes a question of whether or not sufficient evidence to establish a basis for CAT relief and um um it like what would we have to conclude that she faces additional domestic violence from Miguel and the El Salvadoran police are not going to protect her from that and on what basis in the record could we make that conclusion? Well the evidence is that she was faces domestic violence from a gang member who has family members who sell drugs who's threatens to to have her her there's talk about his associates also um being referred to and threatening her and then the question is acquiescing. Daniel didn't testify to any of that I mean his his testimony of gang encounters was separate from hers was it not? Uh well his testimony of gang encounters but I believe he did testify that he was that um the abusive spouse was a gang member. I'm still trying to understand how that can establish a prima facie claim for CAT relief. Uh because if if she faces harm from the gang or gang members that her ex that her abusive spouse is part of or if he inflicts it and the government is acquiescing to that that harm that torture that could establish a CAT claim and so that those elements could be established it are established through Daniel's testimony. Okay I understand your position um thank you. Uh um and then you know I just add regarding um how the gang members would act whether they would tell him to leave immediately but then also ask for Daniel to report on rival gang members um the judge and and the you know the government even saying and in my opinion you know that's just speculation there's nothing in the record to talk about um there's nothing in the record to support that speculation about how gang members would behave and there is evidence in the record that talks about how um gang members assert control they ask people to do things um how they threaten and so that is consistent with the behaviors described in the country conditions and then I uh I'll just finally conclude uh with with Miss Guerrero Esperanza this issue of her taking off running after her husband after she was locked and her teeth were broken that that the government mischaracterizes in his argument what happened she testifies that um he locked her in he the abusive spouse locked her and then took off running the abusive spouse did uh she had Daniel come open in the door for her and then she called the police and then she starts with line 18 through 25 um that she cleans her hands and she starts walking and then encounters the police um and so these are additional details these aren't like a dramatically different she also writes in her declaration that she called the police as she did oftentimes and the police would arrive and tell me they couldn't do anything even though I was on the floor bleeding so in the totality of the circumstances this is an a bloodied incident where she's beaten and she's providing more detail as to what happened afterwards um but given uh this her circumstances this isn't like a singular incident um that happened this is part of a lengthy history and so oh no I'll give you one more sentence go ahead I was just gonna say uh that I think given the totality of the circumstances that the adverse credibility determination was not inconsistencies that were trivial and none for Daniella all right thank you very much Miss Reese thank you both for your briefing and argument in this case this matter is submitted we'll move on to the next one but thank you both thank you
judges: Tallman, Owens, Christensen